UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ASHLEY PASTOR, | : | CIVIL ACTION NO.: |
| APRIL LACKO, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GEAUX FISH FAIRFIELD, LLC, | : | |
| d/b/a Local Kitchen and Beer Bar, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant. | : | MAY 26, 2016 |

## COMPLAINT

### NATURE OF THE ACTION

1. This is an employment discrimination case by two female employees of a restaurant chain alleging a continuing series of discriminatory and sexually harassing conduct against them because of their gender, and because of having complained about unlawful discrimination and sexual harassment in the workplace.

Plaintiffs Pastor and Lacko also bring claims under the common and statutory law of Connecticut for assault, invasion of privacy, intentional infliction of emotional distress, and unpaid wages. Plaintiffs seek a declaration that the acts of the defendant intentionally and unlawfully discriminated against and harassed them because of their sex, and retaliated against them for opposing sexual harassment and gender discrimination. They seek appropriate injunctive relief, lost pay, substantial compensatory and punitive damages, and attorneys' fees and costs.

### JURISDICTION AND VENUE

2. Federal question jurisdiction exists. This is an action arising under the laws of the United States

of America, in particular Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2. Claims also are stated under the common and statutory law of the State of Connecticut against the defendant.  The supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims as they are so related to federal claims in the action that they form part of the same case or controversy under Article III of the Constitution.

3.      Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b), because plaintiffs and defendants all reside in Connecticut and a substantial part of the events giving rise to this Complaint occurred here.

## PARTIES

4.      Ashley Pastor is a citizen of Connecticut and the United States.  She is a former employee of defendant Geaux Fish Fairfield, LLC.

5.      April Lacko is a citizen of Connecticut and the United States.  She is a former employee of Geaux Fish Fairfield, LLC.

6.      Defendant Geaux Fish Fairfield, LLC is a Domestic Limited Liability Company registered in Connecticut and its company number is 1088443.  Its principal place of business is in Connecticut.  It wholly owns several restaurants in Connecticut including Local Kitchen and Beer Bar ("Local") in Fairfield and Norwalk, Connecticut, SBC Brewery in Southport, Connecticut, the Sitting Duck in Trumbull and Stratford, among others.  The owner of Geaux Fish Fairfield, LLC is William DaSilva.

## ALLEGATIONS

7.      Plaintiff Pastor was employed at Local in Fairfield from December 2013 through July 17, 2015. She was constructively discharged from her position as a server at Local on July 17, 2015, as a result of a culture of sexually harassing and illegal work conditions.

8.      During her tenure at Local, she had a positive performance record.

9.      She observed inappropriate sexually harassing behavior from manager Christian Minnery on a regular basis while she was employed.  She complained to Minnery and told him she was going to complain about this conduct to DaSilva, the owner of the defendant, but Minnery threatened her that if she did, she would be fired.

10.   For example, there was posted on the wall of his office a laminated beer list with several sexually graphic names assigned to beer, such as "Prison Pussy Pale," "Smooth Swallow," "Reach Around Rye," "Balls Deep Barleywine," "Wild Yeast Infection," and "Big Load Lambic," among other outrageously sexually explicit and degrading descriptions that would shock the conscience of any reasonable person, employer or employee.

11.     She is aware that Minnery also tolerated sexually harassing conduct against other female employees, including plaintiff April Lacko, who was subjected to sexual harassment by another manager.

12.     At approximately 1 p.m. on July 18, 2015, shortly after informing Minnery that she could no longer tolerate the environment in the workplace, Pastor received a text message from Minnery containing pictures of a mock obituary of her that he wrote.

13.     The obituary consisted of sexually degrading and unconscionable and outrageous comments about Pastor, and her father, Ronald Lawrence Gilligan, who was killed in Manhattan on the morning of the September 11, 2001 terrorist attacks.  It bore a picture of her downloaded from the internet.  Minnery hung the "obituary" in the restaurant, in the management office, and on the managers office door. Others saw the obituary.

14.     The picture of Pastor was from an article that appeared in the Hartford Courant on September 11, 2014, discussing the anniversary of her father's death that day.

15. In the "obituary," Minnery stated, "Her family was comfortably off by the standards of time, but Ashley nevertheless knew disadvantages….with a widowed mother, she was to grow up in a single-parent family".

16. Additionally, Minnery's "obituary" contained a sentence stating that Pastor had had "*several elective surgical procedures that left her looking like a burn victim with 'OK tits'*."  (emphasis supplied).

17. When she received this document, it sent her into a state of anxiety and panic and extreme distress. The references about her family reminded her of what happened to her father on September 11, 2001, the pain of having to live in a home without him, and the outrageous references to her appearance and breasts.

18. She had involuntarily resigned her employment that day due to these and other illegal employment practices, including alteration of her time cards to avoid having to pay her overtime pay for many weeks, with up to 20 hours of overtime being deleted from her time cards for a given week.

19. Plaintiff Lacko also commenced employment with Local Kitchen and Beer Bar in Fairfield, Connecticut in December 2013 as a bartender, working for the same management team. At the time she had 15 years' experience in the restaurant and hospitality business working as a waitress and a bartender.

20. Her manager when she started working at Local was Greg Pettinella. She never received a bad performance review or criticism during her tenure working for him.

21. Local hired a new restaurant manager in April 2015, Mike Gocklowski, who reported to Minnery.

22. At the time, Lacko had been an employee and popular bartender in good standing since she began her employment in December 2013. She had received no customer complaints.

23. Gocklowski, a complete stranger to Lacko, on several occasions touched her inappropriately, including putting his hands on her hips in May 2015 while standing behind her, and pressing his pelvic area against her rear in a manner simulating sexual intercourse.

Case 3:16-cv-00812-RAR   Document 1   Filed 05/26/16   Page 5 of 11

24. She complained to Minnery in May 2015 about this conduct, and was told to quit being a "cry baby" and that if she complained to DaSilva about her "petty bullshit," he would only fire her.

25. In response to her sexual harassment complaint, Minnery asked whether Lacko was a "fucking rat" and, in a sarcastic tone, whether the conduct "was something new" to her. She had made no prior complaints of sexual harassment to him. He told her that he would "handle" the situation, but laughed about it as if it were not something serious, and asked if she was going to complain about him too.

26. Minnery had previously made sexually harassing comments to her, including remarks about her breasts, and about other female employees as well, including remarks about their vaginas and breasts.

27. On one occasion Minnery told her that she was "lucky" that her "tits looked 20" or otherwise she would not have a job.

28. Several weeks later, Minnery asked Lacko if she would help him urinate in the men's room since his arm was in a cast.

29. Within weeks of her complaint to Minnery, Gocklowski terminated Lacko's employment on June 8, 2015, using as a pretext a bad "Yelp" review, dated one day before her termination. The review was not directed at her as witnesses have confirmed.

30. She then called Minnery immediately to ask the real reason she was being terminated. He told her that he didn't "owe [her] any explanations" and hung up on her.

**COUNT ONE**

SEXUAL DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 29 U.S.C. § 2000e-2 *et seq*.

31. Plaintiffs hereby incorporate paragraphs 1 through 30 by reference.

32.	Defendant Geaux Fish Fairfield, LLC is an "employer" as defined by 42 U.S.C. §2000e(b).

33.	Geaux Fish Fairfield, LLC at all times relevant hereto has employed more than 15 employees.

34.	Geaux Fish Fairfield, LLC's conduct, by and through its agents, in treating plaintiffs in a manner unequal to other employees, discriminatorily denied plaintiffs equal treatment on the basis of gender, and otherwise subjected them to a sexually hostile work environment in violation of Title VII, as amended by the Civil Rights Act of 1991.

35.	Geaux Fish Fairfield, LLC, in failing to adequately investigate and remedy the treatment to which plaintiffs were subjected, despite defendant's knowledge of the conduct, discriminatorily denied plaintiffs equal treatment on the basis of sex in violation of Title VII.

36.	As a result of its management's behavior and conduct, Geaux Fish Fairfield, LLC subjected plaintiffs to illegal discrimination and sexual harassment.  Moreover, defendant, through management's behavior, unreasonably interfered with plaintiffs' work performance, and the terms and conditions of their employment.  Plaintiffs' complaints of discrimination were, moreover, used by Geaux Fish Fairfield, LLC as a basis for adverse employment decisions affecting them.

37.	As a result of defendant's conduct, plaintiffs have suffered and will continue to suffer past and future economic and emotional harm.

## COUNT TWO

SEXUAL DISCRIMINATION AND HARASSSMENT IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONN. GEN. STAT. § 46a-60(a)(1)

38.	Plaintiffs hereby incorporate paragraphs 1 through 37 by reference.

39.	Plaintiffs were at all times relevant hereto "employees" as that term is defined in Connecticut General Statutes §46a-51(9).

40.	 Defendant is an "employer" as that term is defined in Connecticut General Statutes §46a-51(10).

At all relevant times hereto, defendant employed more than three persons.

41.     Geaux Fish Fairfield, LLC's conduct, by and through its agents, in treating plaintiffs in a manner unequal to other employees, discriminatorily denied plaintiffs equal treatment on the basis of gender, and otherwise subjected them to a sexually hostile work environment in violation of Title VII, as amended by the Civil Rights Act of 1991.

42.     Geaux Fish Fairfield, LLC, in failing to adequately investigate and remedy the treatment to which plaintiffs were subjected, despite defendant's knowledge of the conduct, discriminatorily denied plaintiffs equal treatment on the basis of sex in violation of Title VII.

43.     As a result of its management's behavior and conduct, defendant Geaux Fish Fairfield, LLC subjected plaintiffs to illegal discrimination and sexual harassment.  Moreover, defendant, through management's behavior, unreasonably interfered with plaintiffs' work performance, and the terms and conditions of their employment.  Plaintiffs' complaints of discrimination were, moreover, used by Geaux Fish Fairfield, LLC as a basis for adverse employment decisions affecting them.

44.     As a result of defendant's conduct, plaintiffs have suffered and will continue to suffer past and future economic and emotional harm.

## COUNT THREE

RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
42 U.S.C. §2000e-3

45.     Plaintiffs hereby incorporate paragraphs 1 through 44 by reference.

46.     Plaintiffs repeatedly complained to defendant's management about the manner in which they were being treated.  Plaintiffs' complaints were ignored.

47.     As a result of plaintiffs' complaints, defendant retaliated against them by terminating their employment and discounting their actual hours worked.

48.     Defendant's actions were taken in retaliation for plaintiffs' efforts to protect their legal rights, and therefore violated 42 U.S.C. § 2000e-3 of Title VII.

49.     As a result of defendant's conduct, plaintiffs have suffered and will continue to suffer past and future economic and emotional harm.

## COUNT FOUR

### RETALIATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONN. GEN. STAT. § 46a-60(4)

50.     Plaintiffs incorporate by reference paragraphs 1 through 49 by reference.

51.     Defendant's actions were taken in retaliation for plaintiffs' efforts to protect their legal rights in violation of C.G.S. §46a-60(4).

52.     As a result of defendant's conduct, plaintiffs have suffered and will continue to suffer past and future economic, physical and emotional harm.

## COUNT FIVE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53.     Plaintiffs incorporate by reference paragraphs 1 through 52 by reference.

54.     By its actions, defendant and its employees and agents intended to inflict emotional distress on plaintiffs, or knew or should have known that emotional distress was the likely result of the conduct described in detail above.

55.     Defendant's conduct as described above was extreme and outrageous, exceeding all bounds usually tolerated by decent society, of a nature which was especially calculated to cause, and did cause, mental distress of a very serious kind.

56.     Defendant's conduct was the proximate cause of the plaintiffs' mental and emotional distress.

57.     The emotional distress sustained by the plaintiffs was severe.

58.     Defendant's conduct was and is the proximate cause of severe non-economic damages to plaintiffs, including sleeplessness, anxiety, fear, panic, re-living the death of a parent on the morning of September 11, 2001, and other mental and emotional trauma.

## COUNT SIX

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

59.     Plaintiffs incorporate paragraphs 1 through 58 by reference.

60.     By its actions, defendant's conduct engaged in unreasonable conduct which created an unreasonable risk of causing the plaintiffs emotional distress in the termination process.

61.     Plaintiffs' distress was foreseeable by the defendants.

62.     Plaintiffs' emotional distress was severe enough that it might result in illness or bodily harm.

63.     Defendant's conduct was the cause of the plaintiff's distress.

64.     Defendant's conduct was and is the proximate cause of severe non-economic damages to plaintiffs, including sleeplessness, anxiety, fear, panic, re-living the death of a parent on the morning of September 11, 2001, and other mental and emotional trauma.

## COUNT SEVEN

### VIOLATION OF CONN. GEN. STAT. § 31-72, 31-76b, UNPAID OVERTIME WAGES

(By Plaintiff Pastor)

65.     Plaintiff Pastor incorporates by reference paragraphs 1 through 64.

66.     Pastor was entitled to be paid time and half for any hours worked in excess of 40 hours per week under Connecticut law.

67.     She was required to fill out time cards showing the amount of hours she worked each week.

68.     Defendant's management unlawfully altered her time cards to deprive her of hundreds of hours of overtime pay due and owing her during her tenure.

69. To date defendant has failed to pay Pastor the overtime compensation to which she is entitled, entitling her to payment of double the amounts due, plus costs and attorneys' fees as of right.

## COUNT EIGHT

### ASSAULT

(By Plaintiff Lacko)

70. Plaintiff Lacko incorporates paragraphs 1 through 64 by reference.

71. By its actions, defendant's management engaged in physical assault against her.

72. Specifically, by one its managers placing his hands on her hips in an unwanted manner, and pulling her toward his groin in a manger simulating sexual intercourse, in front of customers.

73. Plaintiff Lacko has suffered severe emotional distress as a result of defendant's illegal conduct.

## COUNT NINE

### INVASION OF PRIVACY

(By Plaintiff Pastor)

74. Plaintiff Pastor incorporates by reference paragraphs 1 through 69.

75. By its actions, defendant unreasonably intruded upon the seclusion of plaintiff Pastor and unreasonably publicized traumatic events in her private life.

76. Defendant's actions in doing so caused and continue to cause severe emotional distress to Pastor.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs Pastor and Lacko respectfully request that this Court:

1. Empanel a jury;

2. Award compensatory and punitive damages;

2. Award lost past and future wages and benefits;

3. Award double damages, reasonable attorneys' fees and costs pursuant to Conn. Gen. Stat. § 31-72;

4. Award attorneys' fees and costs pursuant to all applicable statutes and common law;

5. Retain jurisdiction over this action until defendant has fully complied with the orders and judgment of this Court; and

6. Award such other relief, including equitable relief, as this Court deems just and proper.

Plaintiffs demand a jury trial on all counts.


        PLAINTIFFS
        ASHLEY PASTOR
        APRIL LACKO


By:   /s/ Jeffrey S. Bagnell
       Jeffrey S. Bagnell
       Federal Bar No. CT18983
       Lucas Bagnell Varga LLC
       2425 Post Road, Suite 200
       Southport, Connecticut 06890
       (203) 227-8400
       (203) 227-8402 (fax)
       jbagnell@lbv-law.com

       Their attorney