UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ASHLEY PASTOR AND APRIL LACKO | : | NO. 3:16-cv-00812(MPS) |
| Plaintiffs, | : | |
| v. | : | |
| GEAUX FISH FAIRFIELD, LLC, | : | |
| Defendant. | : | December 14, 2016 |

## **MEMORANDUM IN SUPPORT OF MOTION FOR PRE-JUDGMENT REMEDY**

Pursuant to Federal Rule of Civil Procedure 64 and sections 52-278a *et seq.* of the Connecticut General Statutes, as adopted by District of Connecticut Local Civil Rule 4(c), plaintiffs Ashley Pastor and April Lacko seek a prejudgment remedy in the amount of $950,000 against defendant Geaux Fish Fairfield, LLC.

Plaintiffs seek this remedy because defendant has been unable to confirm whether it has insurance covering a judgment in their favor. This imposes a serious financial risk on the plaintiffs. Prejudgment relief is required to maintain the status quo, to ensure that defendant has the ability to pay any judgment, and to ensure that defendant's financial condition does not moot the action by destroying plaintiffs' ability to collect any judgment they may obtain after trial.

## **FACTUAL BACKGROUND**

As more fully set forth in the plaintiffs' detailed Affidavit, this is an employment discrimination case by two female employees of a restaurant chain owned by defendant. It alleges a continuing series of discriminatory and sexually harassing conduct against them because of their gender, and because of having complained about unlawful discrimination and sexual harassment in the workplace.

Plaintiffs Pastor and Lacko also bring claims under the common and statutory law of Connecticut for assault, invasion of privacy, intentional infliction of emotional distress, and unpaid wages. Plaintiffs seek a declaration that the acts of the defendant intentionally and unlawfully discriminated against and harassed them because of their sex, and retaliated against them for opposing sexual harassment and gender discrimination. They seek appropriate injunctive relief, lost pay, substantial compensatory and punitive damages, and attorneys' fees and costs.

As stated in the Complaint and plaintiffs' respective Affidavits in Support of Prejudgment Remedy filed herewith, Plaintiff Pastor was employed at Local in Fairfield from December 2013 through July 17, 2015. She was constructively discharged from her position as a server at Local on July 17, 2015, as a result of a culture of sexually harassing and illegal work conditions.

During her tenure at Local, she had a positive performance record. She observed inappropriate sexually harassing behavior from manager Christian Minnery on a regular basis while she was employed. She complained to Minnery and told him she was going to complain about this conduct to William DaSilva, the owner of defendant. Minnery

threatened that if she did, she would be fired.

In full view of plaintiffs and other employees, there was posted on the wall of Minnery's office for months on end a laminated beer list with several sexually graphic names assigned to beer. For example, Prison Pussy Pale," "Smooth Swallow," "Reach Around Rye," "Balls Deep Barleywine," "Wild Yeast Infection," and "Big Load Lambic," among other outrageously sexually explicit and degrading descriptions that would shock the conscience of any reasonable person. Ex. 1.

Pastor is aware, moreover, that Minnery tolerated sexually harassing conduct against other female employees, including plaintiff April Lacko. Lacko was subjected to sexual harassment, including bodily touching, by another manager, and was threatened with termination if she complained.

At approximately 1 p.m. on July 18, 2015, shortly after she informed Minnery that she could no longer tolerate the workplace environment, Pastor received a text message from him containing pictures of a mock obituary of her. The "obituary," loosely based on the obituary of Mother Theresa in the New York Times, and paraphrased and edited by Minnery, consisted of sexually degrading and unconscionable comments about Pastor and her father, Ronald Lawrence Gilligan, who was killed in New York City on September 11, 2001. It bore a picture of her downloaded from the internet. Minnery hung the obituary in the restaurant, in the management office, and on the manager's office door. Others saw and read the document. Ex. 2.

The picture of Pastor was cut and pasted from an article that appeared in the Hartford Courant on September 11, 2014, discussing the anniversary of her father's death.

3

In the obituary, Minnery wrote, "[h]er family was comfortably off by the standards of time, but Ashley nevertheless knew disadvantages . . . with a widowed mother, she was to grow up in a single-parent family." In addition, it contained a sentence stating that Pastor had had "several elective surgical procedures that left her looking like a burn victim with 'OK tits'." When she viewed this document, it sent her into a state of extreme anxiety and emotional distress. The references about her family reminded her of what happened to her father on September 11, 2001; the pain of having to live in a home without him; and the outrageous and cruel references to her appearance and breasts.

Pastor had involuntarily resigned her employment due to similar conduct and other illegal employment practices, including alteration of her time cards to avoid having to pay her overtime pay for many weeks. Minnery or his assistant manager deleted up to 20 hours of overtime from her time cards for any given week.

Plaintiff Lacko commenced employment with defendant's Local Kitchen and Beer Bar in Fairfield, Connecticut in December 2013 as a bartender, ultimately working for the same management team. At the time, she had 15 years' experience in the restaurant and hospitality business working as a waitress and a bartender.

Her manager when she started was Greg Pettinella. She never received a bad performance review or criticism during her tenure working for him. Local hired a new restaurant manager in April 2015, Mike Gocklowski, who reported to Minnery.

At the time, Lacko was an employee and popular bartender in good standing since she had begun her employment in December 2013. She received no customer complaints. Gocklowski, a complete stranger to Lacko, on several occasions touched her

inappropriately, including putting his hands on her hips in May 2015 while standing behind her, while pressing his pelvic area against her rear in a manner simulating sexual intercourse.

In May 2015, she complained to Minnery about this conduct, and was told to quit being a "crybaby." He further informed her that if she complained to DaSilva about her "petty bullshit," DaSilva would only fire her.

In response to her sexual harassment complaint, Minnery also asked whether Lacko was a "fucking rat" and, in a sarcastic tone, whether the conduct "was something new" to her. She had made no prior complaints of sexual harassment to him. While he told her that he would handle the situation, he laughed about it as if it were not something serious, and asked if she was going to complain about him too.

Minnery had previously made sexually harassing comments to Lacko, including remarks about her breasts, and about other female employees as well, including remarks about their vaginas and breasts. On one occasion Minnery told her that she was "lucky" that her "tits looked 20," or otherwise she would not have a job. Several weeks later, Minnery asked Lacko if she would help him urinate in the men's room since his arm was in a cast.

Within weeks of her complaint to Minnery, Gocklowski terminated Lacko's employment on June 8, 2015, using as a pretext a bad "Yelp" review, dated one day before her termination. The review was not directed at her, as witnesses have confirmed. Ex. 3. She then called Minnery immediately to ask the real reason she was being terminated. He

told her that he didn't "owe [her] any explanations" and hung up on her.

## ARGUMENT

**I.     Standard For Prejudgment Remedy**

Under Connecticut General Statutes Section 52-278c(a)(2), to obtain a prejudgment remedy, a plaintiff must "set[] forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff." Conn. Gen. Stat. § 52-278c(a)(2) (2003). "[P]robable cause is a *bona fide* belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *New England Land Comp., Ltd. v. DeMarkey, Jr.,* 213 Conn. 612, 620, 569 A.2d 1098 (1990) (quoting *Wall v. Toomey*, 52 Conn. 35, 36 (1884)) (emphasis in the original). Probable cause is a "clearly" lesser standard than preponderance of the evidence:  "[b]elow preponderance of the evidence is a probable cause standard, which is the standard used for prejudgment remedies and is clearly something less than a preponderance of the evidence standard. *CC Cromwell LTD. Partnership v. Adames,* 124 Conn.App. 191, 194 (2010).

It "is a flexible common sense standard" that "does not demand that a belief be

correct or more likely true than false." Id. (*citing Texas v. Brown*, 460 U.S. 730 (1983)). Indeed, it is irrelevant that "after discovery or a full trial on the merits, a different result might ensue." *Pitney Bowes Credit Corp. v. Escotel Software, Inc.,* CV010183438, 2002 Conn. Super. LEXIS 660, *11 (Conn. Super. Ct. at Stamford Mar. 7, 2002).

The hearing for determining whether probable cause exists is not a "full scale trial on the merits" to determine if plaintiff will prevail, but only a hearing to determine if "there is probable cause to sustain the validity of the claim." *Ledgebrook Condominium Assn., Inc. v. Lusk Corp.*, 172 Conn. 577, 584, 376 A.2d 60 (1977)). The court determines this by "weighing probabilities" of "both legal and factual issues." *Bank of Boston Connecticut v. Schlesinger*, 220 Conn. 152, 156, 595 A.2d 872 (1991) (quoting *Augeri v. C.F. Wooding Co.*, 173 Conn. 426, 429, 378 A.2d 538 (1977); *Babiarz v. Hartford Special, Inc.*, 2 Conn. App. 388, 393, 480 A.2d 561 (1984)). Connecticut's Appellate Court has stated that even a mere affidavit by the plaintiff can suffice to provide the court with all it needs to meet this broad probable cause standard. *Doe v. Rapoport*, 80 Conn. App. 111, 117 (2003).

Further, a plaintiff need only meet the standard for probable cause for one count of a complaint for the court to award the prejudgment remedy. *See Stone v. Frederick Hobby Assoc. II,* CV000181620S, 2001 Conn. Super. LEXIS 1853, at *23 (Conn. Super. Ct. July 10, 2001) (stating that since the plaintiffs met the probable cause standard on their breach of contract counts, the court ordinarily would "not need to address the plaintiffs' remaining

counts").

## II. The Probable Cause Standard is Easily Met Here

Plaintiffs already have in their possession written evidence of sexually harassing and tortious conduct of an extreme nature. This evidence, including the "obituary" about plaintiff Pastor, could easily lead a jury to award a substantial amount of compensatory and punitive damages against defendant under their Title VII and common law tort causes of action. Plaintiffs, moreover, already have an affidavit from a witness corroborating their claims of improper conduct in the workplace, and that rebuts defendant's claim that one or both of plaintiffs' were "racist" toward customers. Plaintiffs, in addition, have provided economic damages analyses to defendant as well for each plaintiff in the cumulative amount of $190,543 ($116,158 for Pastor; $74,385 for Lacko). Ex. 4. Punitive and compensatory damages are also available to each plaintiff. Comparable cases, as cited below, support potential awards of at least $250,000 ($150,000 for Pastor; $100,000 for Lacko) and $350,000 ($250,000 for Pastor; $100,000 for Lacko), respectively.

Attorneys' fees, which are recoverable under the Title VII counts, will also easily exceed $250,000 through trial, if one takes place. All told, plaintiffs reasonably estimate the amount of a potential judgment to exceed $1,000,000. Accordingly, the requested prejudgment remedy amount, $950,000, is reasonable.

In sum, while the plaintiffs have not had the benefit of complete discovery, there is

8

already more than probable cause to believe that a jury could find defendant liable under each of the causes of action in plaintiffs' Complaint. The evidence amassed to date clearly shows sexual harassment, retaliation, and both negligent and intentional infliction of emotional distress upon plaintiffs of an extreme nature.

As set forth in the accompanying Affidavit of the plaintiffs, they expect to prevail on their claims in an amount approaching $1 million, or more, based on existing precedent in similar cases. Plaintiffs' emotional distress was not merely of the "garden variety" kind, but severe, requiring medication and counseling in plaintiff Pastor's case. Plaintiff Lacko, moreover, was not merely on the receiving end of repeated sexually harassing comments, but was physically assaulted in a sexual manner. The case law makes clear, moreover, that expert testimony is not required to affirm an award of substantial compensatory and punitive damages in similar cases.

Existing case law well supports plaintiffs' estimates of potential compensatory damages and, indeed, shows their estimates to be conservative. To determine whether a compensatory award is within a reasonable range, courts are to examine comparable injuries. *See Ismail v. Cohen*, 899 F.2d 183, 187 (2d Cir.1990). Courts have affirmed high emotional distress awards where, as here, the evidence demonstrated that a plaintiff had suffered substantial mental distress. *Ramirez v. New York City Off-Track Betting Corp.*, 112 F.3d 38, 41 n. 1 (2d Cir.1997) ($500,000 award for pain and suffering does not shock the

9

conscience); see also *Chopra v. General Electric Company*, 527 F.Supp.2d 530 (D. Conn. 2007), (court held that a jury's award of $500,000 in compensatory damages was not so excessive as to "shock the judicial conscience and constitute a denial of justice"); *Passantino v. Johnson & Johnson Consumer Products, Inc*., 212 F.3d 493, 514 (9th Cir.2000) ($1 million emotional distress damage award - - without any expert testimony regarding emotional distress damages - - affirmed); *Settlegoode v. Portland Public Schools*, 2005 WL 1899376 (D.Or.2005) ($500,000 in non-economic damages awarded for civil rights retaliation claim pursuant to section 1983); *Baker v. John Morrell & Co., 266 F.Supp.2d 909* (N.D. Iowa 2003) (award of $385,000 in past and future emotional distress damages held not excessive for sexually hostile environment in workplace). Thus, given the evidence already in their possession, plaintiffs more than satisfy the low standard of probable cause necessary to support an application in the amount of $950,000.

**III.     Defendant's Inability or Reluctance to State Whether It Has Insurance Covering Any Judgment in Plaintiffs' Favor Warrants Immediate Relief to <u>Protect their Interests</u>.**

Defendant initially took the position that it had no insurance covering any settlement or judgment entered against it after trial. At the parties' settlement conference with Judge Martinez, however, defendant disclosed toward the end that it "might" have an umbrella policy that provided coverage, after claiming that defendant had no more than $15,000 of its own funds available to fund any settlement. That policy was disclosed on

and is 165 pages long with numerous amendments.   Ex. 5.

Plaintiffs have repeatedly inquired whether defendant's carrier has made a timely coverage determination, as required by Connecticut insurance law, but to date have received no reply.   To the best of plaintiffs' knowledge, defendant's carrier has been aware of plaintiffs' claim for more than two months, and claimed that it would issue a coverage determination last October.  Ex. 6.  Two months later, it has still not taken a coverage position.

Accordingly, absent prejudgment relief, plaintiffs may be left without a viable remedy as defendant could go bankrupt or have insufficient funds to pay a judgment rendered in plaintiffs' favor.  Prejudgment relief is therefore essential.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Prejudgment Remedy should be granted in all respects, and the Court should grant such other relief as it deems just and proper.

          RESPECTFULLY SUBMITTED,
          PLAINTIFFS

By:       ___/s/Jeffrey S. Bagnell_____
                  Jeffrey S. Bagnell
                  Federal Bar No. CT18983
                  Lucas Bagnell Varga LLC
                  2425 Post Road
                  Suite 200

Southport, Connecticut 06890  
(203) 227-8400  
(203) 227-8402 (fax)  
jbagnell@lbv-law.com

**CERTIFICATION**

      This is to certify that on this 14th day of December 2016 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties, as listed below, by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

                                                                                    /s/Jeffrey S. Bagnell